UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| JENNIFER CHAMPAGNE,<br>Plaintiff | : <br> : <br> : | No. 3:18-CV-10390 (VLB) |
| v. | : <br> : | |
| COLUMBIA DENTAL, P.C.,<br>Defendant. | : <br> : <br> : <br> : <br> : | NOVEMBER 5, 2019 |

## MEMORANDUM OF DECISION DENYING
## DEFENDANT'S MOTION FOR SUMMARY JUDGMENT, [ECF NO. 33]

Before the Court is Defendant Columbia Dental, P.C.'s ("Defendant") Motion for Summary Judgment. [ECF No. 33]. For the reasons set forth below, the Court DENIES Defendant's Motion for Summary Judgment.

## Background

Plaintiff Jennifer Champagne ("Plaintiff") commenced this action against Defendant, initially alleging that Defendant engaged in sexual harassment, gender discrimination, and retaliation, in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. Section 2000e et. sq. [ECF No. 1.]. On November 17, 2018, Plaintiff filed her first amended complaint, eliminating allegations of gender discrimination and retaliation and pleading additional facts in support of her sexual harassment claim. [ECF No. 15]. On November 21, 2018, Defendant filed a Motion to Dismiss Plaintiff's Amended Complaint, [ECF No. 16], arguing, *inter alia*, that the Amended Complaint did not state a claim for which relief could be granted under Rule 12(b)(6). [ECF

1

No. 16-1 at 4-14]. This was so, according to Defendant, because even though the Amended Complaint alleged that Defendant's employee dentist Dr. John Stanko, DMD, "(1) threw items and raised his voice in a profane manner (without expressing the frequency of such actions); (2) referred to the plaintiff as his "hot assistant" and "daytime wife" (without expressing the frequency of such characterizations); (3) massaged the plaintiff's shoulders "several times;" (4) grabbed the plaintiff's hand during, and in connection with, a dental procedure; and (5) thrust a drill into the plaintiff's hand during, and in connection with, a dental procedure," none of those actions, "even when considered in the aggregate, constitutes sexual harassment." *Id.* at 7.

On May 8, 2019, in a Memorandum of Decision denying Defendant's Motion to Dismiss, the Court disagreed. [ECF No. 28]. After summarizing the Amended Complaint's factual allegations, the Court set forth the required legal standard, noting that Plaintiff's claim was that Defendant "created a hostile or offensive work environment." *Id.* at 8. The Court found that the allegations in the Amended Complaint "establishe[d] an objectively hostile work environment," *id.* at 10, for the following reasons:

> Here, Stanko threw and punched items in the office, and yelled and cursed during the course of Plaintiff's employment. *See* [Dkt. 15 at ¶¶ 19-20]. He also addressed Plaintiff as his "hot assistant" and his "daytime wife," and massaged her shoulder several times. He engaged in arguably misogynistic conduct, namely forcefully grabbing her hand to force a tube into a patient's mouth, and jamming a drill into her hand, puncturing her glove, and angrily telling her to hold it in place. *Id.* at ¶¶ 21-22 & 30. Plaintiff complained to district manager Ochrim who did not address or attempt to remedy the issue. *Id.* at ¶¶ 40-41. Plaintiff told Ochrim that because of Stanko's behavior, she could not go back to work with him. In response, Ochrim advised

2

> Plaintiff that if she did not work with Stanko then she would not have a job. *Id*. ¶ at 29. On another occasion, Plaintiff complained and Ochrim focused on her parental status responding, "ok, but it's a job" and "you do have kids." *Id*. at ¶ 43. Plaintiff mentioned to other employees that because of Stanko's conduct her "anxiety was through the roof." *Id*. at ¶ 32.
>
> None of these instances taken alone give rise to the conclusion that Plaintiff's work environment was permeated with discriminatory intimidation, ridicule and insult that was sufficiently severe to alter the conditions of her employment and create a hostile or offensive work environment. However, when taken in the aggregate, a reasonable fact finder could determine that the Plaintiff subjectively perceived the environment to be hostile and that her mistreatment was based on her gender.

*Id.* at 10-11.

The Court also found that the Amended Complaint's allegations supported Plaintiff's claim for constructive discharge, [ECF No. 15 ¶ 45], because the allegations provided "sufficient evidence that would lead a reasonable fact finder to conclude that Plaintiff found her work conditions to be intolerable," and because Defendant's "indifference to Plaintiff's complaints about Stanko may have contributed to the intolerable nature of Plaintiff's work conditions." [ECF No. 28 at 13].

On August 9, 2019, Defendant filed the instant Motion for Summary Judgment. [ECF No. 33]. Defendant first argues a procedural violation, namely, that "42 U.S.C. section 2000e-5(e)(1) requires that a petitioner alleging a discriminatory employment practice must file the charge thereof with the applicable governmental entity having jurisdiction over such charge within 300 days after the commission of such act that is the subject of the charge." [ECF No. 33-2 at 1]. Because Plaintiff undisputedly waited until January 2, 2018 to file her

3

CHRO/EEOC complaint, the acts of sexual harassment had to have occurred no earlier than March 24, 2017. *Id.* at 2. This means, according the Defendant, that only acts of harassment taking place between March 24 and March 27, 2017, when Plaintiff left Defendant's employ, should be considered when ruling on Defendant's Motion for Summary Judgment. *Id.* at 2-8.

Even if all of the evidence adduced to date is considered, Defendant argues, it "do[es] not constitute, as a matter of law, sexual harassment." *Id.* at 7-17.

Finally, Defendant argues that Defendant did not constructively discharge Plaintiff because "[a] reasonable person in the plaintiff's position would not have perceived the plaintiff's working conditions so intolerable as to compel separation." *Id.* at 17-19.

## Legal Standard

Summary judgment should be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party bears the burden of proving that no genuine factual disputes exist. *See Vivenzio v. City of Syracuse*, 611 F.3d 98, 106 (2d Cir. 2010). "In determining whether that burden has been met, the court is required to resolve all ambiguities and credit all factual inferences that could be drawn in favor of the party against whom summary judgment is sought." *Id.* (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986); *Matsushita Electric Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)). This means that "although the court should review the record as a whole, it must disregard all evidence favorable

4

to the moving party that the jury is not required to believe." *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 151 (2000); *see Welch-Rubin v. Sandals Corp.*, No. 3:03-cv-00481, 2004 WL 2472280, at *4 (D. Conn. Oct. 20, 2004) ("At the summary judgment stage of the proceeding, [the moving party is] required to present admissible evidence in support of their allegations; allegations alone, without evidence to back them up, are not sufficient.") (citing *Gottlieb*, 84 F.3d at 518); *Martinez v. Conn. State Library*, 817 F. Supp. 2d 28, 37 (D. Conn. 2011). Put another way, "[i]f there is any evidence in the record that could reasonably support a jury's verdict for the nonmoving party, summary judgment must be denied." *Am. Home Assurance Co. v. Hapag Lloyd Container Linie, GmbH*, 446 F.3d 313, 315–16 (2d Cir. 2006) (internal quotation marks and citation omitted).

A party who opposes summary judgment "cannot defeat the motion by relying on the allegations in his pleading, or on conclusory statements, or on mere assertions that affidavits supporting the motion are not credible." *Gottlieb v. Cnty of Orange*, 84 F.3d 511, 518 (2d Cir. 1996). Where there is no evidence upon which a jury could properly proceed to find a verdict for the party producing it and upon whom the onus of proof is imposed, such as where the evidence offered consists of conclusory assertions without further support in the record, summary judgment may lie. *Fincher v. Depository Trust & Clearing Corp.*, 604 F.3d 712, 726–27 (2d Cir. 2010).

The Equal Employment Opportunities Commission (EEOC) has defined sexual harassment as conduct that has the purpose or effect of unreasonably interfering with an individual's work performance or creating an intimidating

5

hostile, or offensive work environment. 29 C.F.R. § 1604.11(a)(3). "A claim of 'hostile environment' sexual harassment is a form of sex discrimination that is actionable under Title VII." *See Meritor Savings Bank v. Vinson*, 477 U.S. 57, 57 (1986); *Redd v. New York Div. of Parole*, 678 F.3d 166 (2d. Cir. 2012).

To prevail on a Title VII claim predicated on sexual harassment, the Plaintiff must satisfy both a subjective and objective component. Plaintiff must establish that the discriminatorily hostile work environment was one that was permeated with discriminatory intimidation, ridicule, and insult that was sufficiently severe to alter the conditions of her employment. *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993); *Gregory v. Daly*, 243 F.3d 687 (2d. Cir. 2001). The misconduct shown must be "severe or pervasive enough to create an objectively hostile or abusive work environment," and the victim must also subjectively perceive that environment to be abusive. *See Alfano v. Costello*, 294 F.3d 365, 374 (2d Cir. 2002) (*citing Harris*, 510 U.S. at 21). Further, the standard for establishing a hostile work environment claim is high. *Terry v. Ashcroft*, 336 F.3d 128, 148 (2d Cir. 2003). However, the Second Circuit has cautioned against setting the bar too high, highlighting that "[w]hile a mild, isolated incident does not make a work environment hostile, the test is whether the harassment is of such quality or quantity that a reasonable employee would find the conditions of her employment altered for the worse." *Id.*

This determination may include an assessment of "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Harris*, 510 U.S. at 23. In *Terry*, the court

determined that there was sufficient evidence to infer that Plaintiff suffered from a hostile work environment because "[c]ontrary to defendants' assertions, plaintiff [was] not complaining merely about sporadic and isolated events, but rather about his daily working conditions." 336 F.3d at 149.

Additionally, the effect on the employee's psychological well-being is relevant in determining whether that employee found the environment to be hostile. However, "Title VII comes into play before the harassing conduct leads to a nervous breakdown. A discriminatorily abusive work environment, even one that does not seriously affect employees' psychological well-being, can and often will detract from employees' job performance, discourage employees from remaining on the job, or keep them from advancing in their careers." *Harris*, 510 U.S. at 22. Therefore, all of these factors are relevant, but no single factor is required. *Id* at 23.

To prevail on a Title VII claim predicated on sexual harassment, the Plaintiff must also establish that the sexual harassment that created the hostile work environment was based on gender. In fact, it has been described as "axiomatic" to establishing a sex-based hostile work environment claim under Title VII. *Alfano*, 294 F.3d at 374. (internal citation omitted). "Facially neutral incidents may [also] be included ... among the 'totality of the circumstances' that courts consider in any hostile work environment claim, so long as a reasonable fact-finder could conclude that they were, in fact, based on sex. But this requires some circumstantial or other basis for inferring that incidents sex-neutral on their face were in fact discriminatory." *Id*. at 378. Courts have found this prong to be satisfied when the

7

same individual is accused of multiple acts of harassment, some overtly sexual and some that appear to be facially neutral. *See Raniola v. Bratton*, 243 F.3d 610, 622-23 (2d Cir.2001); *Howley v. Town of Stratford*, 217 F.3d 141,155-56 (2d Cir. 2000). In a similar scenario, the Second Circuit upheld a finding where over a two-and-a-half-year time span, the Plaintiff was subjected to "offensive sex-based remarks, disproportionately burdensome work assignments, workplace sabotage, and one serious public threat of physical harm." *See Raniola*, 243 F.3d at 621.

"[C]onsideration of the entire scope of a hostile work environment claim, including behavior alleged outside the statutory time period, is permissible for the purposes of assessing liability, so long as any act contributing to that hostile environment takes place within the statutory time period." *AMTRAK v. Morgan*, 536 U.S. 101, 105 (2002). "Hostile [work] environment claims are different in kind from discrete acts. Their very nature involves repeated conduct. . . . It occurs over a series of days or perhaps years and, in direct contrast to discrete acts, a single act of harassment may not be actionable on its own." *Id.* at 115 (citing 1 B. Lindemann & P. Grossman, Employment Discrimination Law 348-49 (3d ed. 1996). "Such claims are based on the cumulative effects of individual acts." *Id.*

## Analysis

The Court finds, contrary to Defendant's argument, that all of the evidence of a hostile work environment adduced to date may be considered in ruling on Defendant's Motion for Summary Judgment. As the Court found in its Memorandum of Decision on Defendant's Motion to Dismiss, the allegations in the

Amended complaint indicate that Plaintiff was subjected to "an objectively hostile work environment." [ECF No. 28 at 10]. Because this is a hostile work environment case, and not sexual harassment based on discrete acts, "consideration of the entire scope of a hostile work environment claim, including behavior alleged outside the statutory time period, is permissible for the purposes of assessing liability, so long as any act contributing to that hostile environment takes place within the statutory time period." *Morgan*, 536 U.S. at 105. At least two acts of harassment occurred within the statutory time period. Namely, Dr. Stanko "stabbed [Plaintiff] with [a] drill with a Bur at the end" on March 27, 2017, and Dr. Stanko separately threw a dental burr at plaintiff that same day. [ECF No. 33-1 (Plaintiff's Deposition Transcript at 60-61)]. Defendant's argument, therefore, that the Court should ignore any acts that may have contributed to the hostile work environment Plaintiff was subjected to that occurred before March 24, 2017, is meritless.

Analyzing the evidence as a whole, as permitted by *Morgan*, the court concludes that a reasonable fact finder could determine that Plaintiff was subjected to a hostile work environment. In addition to the two aforementioned events, Dr. Stanko massaged Plaintiff's shoulders twice, which made Plaintiff "very uncomfortable." *Id.* at 103-07. Dr. Stanko, from the start of Plaintiff's employment but especially from January to March 2017 threw various items when he got angry, including pens, dental burrs, dental instruments, suction tips, dental probes, basically "everything," including sometimes throwing them at Plaintiff. *Id.* at 63-64, 66-67, 69. Dr. Stanko punched, at least 15 times, a battery connected to his

9

glasses, when the light it powered would go out. *Id.* at 71-72. Dr. Stanko yelled "always," calling other employees, including Plaintiff, incompetent. *Id.* at 75. Dr. Stanko also used profane language, such as the "Jesus Christ," "shit," and "asshole." *Id.* at 79-80. Dr. Stanko called Plaintiff his "hot assistant" and his "daytime wife." *Id.* at 85. As regards the term "hot assistant," Plaintiff explained that "a few of [Dr. Stanko's] friends that were patients would come in and we'd work on them and he'd be like, here's my hot assistant Jennifer. That's how he would do it. If he knew the gentlemen that we were working on, then he would say it." *Id.* at 87. Dr. Stanko also asked Plaintiff if, when he traveled to Las Vegas on vacation, he would "see [Plaintiff] stripping around a pole on a stage." [ECF No. 36-4 (Plaintiff's Deposition Transcript at 140)].

Two particular events warrant special mention. On Plaintiff's last day, March 27, 2017, Dr. Stanko became angry with Plaintiff when she was not performing dental suction on a patient properly. He then squeezed Plaintiff's hand around the suction, told her that she "was not F'n suctioning right," and then stuck a dental drill into Plaintiff's hand, puncturing her medical glove and sticking her with a dental burr. [ECF No. 36-4 (Plaintiff's Deposition Transcript at 82)]. A somewhat similar event occurred on February 21, 2017 when Dr. Stanko forcefully grabbed Plaintiff's hand and forced a suction tube into a patient's mouth. *Id.* at 128.

For his part Dr. Stanko admitted to massaging the shoulders of Defendant's office manager, [ECF No. 36-5 (Deposition Transcript of Dr. John Stanko at 20)], that he struck a wall in frustration, *id.* at 25, that he called Defendant's employee dental assistant Tarah Johnson his "daytime wife" "a couple times a month," *id.* at

10

32, and that he received no training of any kind while working at Defendant's various locations regarding sexual harassment in the workplace, *id.* at 51-52.

Defendant's dental assistant Tarah Jameson testified that she heard Dr. Stanko yell several times, that he used profanity, that she saw him throw dental burrs, "plastic barriers," pens, and matrix bands. Dr. Stanko also massaged her shoulders twice. Importantly, Ms. Jameson testified that every dental assistant in the office complained about Dr. Stanko's behavior. [ECF No. 36-6 (Deposition Transcript of Tarah Jameson at 10, 2, 14, 26, 69)]. Ms. Jameson also testified that Dr. Stanko had attempted to massage Defendant's employee Tia once, but she "made it clear it wasn't going to happen." *Id.* at 76.

Plaintiff and Ms. Jameson complained to Defendant in various ways about Dr. Stanko's behavior, but Defendant's response was inadequate. *See id.* at 25 (noting that Ms. Jameson used Defendant's "formal complaint process" to complain about Dr. Stanko, but she never heard anything back); [ECF No. 36-4 (Plaintiff's Deposition Transcript at 84, 91, 93 (testifying that Defendant's employees Tia, Olivia and Plaintiff wrote complaints to Defendant, but Plaintiff never heard anything back))].

In fact, it appears that Defendant's Clinical Director Abbas Mohammadi ignored Defendant's employees' complaints and actually sided with Dr. Stanko. On March 6, 2017, Tarah Johnson sent an email to Cintia Legault regarding the numerous complaints she had received regarding Dr. Stanko's behavior, in which she stated as follows:

11

> I have received numerous complaints from assistants in regards to the treatment they are receiving from Dr. Stanko while assisting chair side. It is not an exaggeration when I say that every assistant is becoming increasingly uncomfortable working chair side with Dr. Stanko. He is verbally aggressive with the assistants. He has even grabbed one of our assistants by the hand forcing her hand into position on the patients [sic] mouth that he wanted. I don't think I need to emphasize how unacceptable this treatment is. This is not a safe environment for any of our staff and this leads into an unhealthy environment for our patients. I appreciate your time and assistance on this matter.

[ECF No. 36-8]. The same day Cintia Legault forwarded this email to Clinical Director Mohammadi.

In an email sent a week later, on March 13, 2017, Clinical Director Mohammadi sent Dr. Stanko an email as follows:

> Dear JR,
> This is a follow-up conversation we had together this afternoon. As we both agreed that if you have any concern about the performance of your assistant that it is best to go to the office manager to address it. To try and address it yourself can put you in a bad situation without a witness and to have anything said or done possibly taken out of context can shed a bad light. I know you are a good provider and the feedback from patients has been continuously positive. Rocky Hill is building into a positive atmosphere and we expect great things as you continue to help build that office.
> Because you need to be aware of the complaint I will attach it for your perusal. We always need to investigate every complaint as you are aware, but I believe a different way of addressing the issue will be much healthier.

[ECF No. 36-9].

The Court finds that on these facts, taken in the aggregate, a reasonable trier of fact could find that Plaintiff subjectively perceived the environment to be hostile and that her mistreatment was based on her gender. Plaintiff was subjected to constant stream of insults, profanity, inappropriately sexual comments, unwanted

12

massages that made her uncomfortable, assaults in the form of being grabbed inappropriately by Dr. Stanko, and other depredations. Other dental assistants suffered the same fate. A reasonable fact finder could determine that Defendant subjected Plaintiff to "severe or pervasive enough [harassment] to create an objectively hostile or abusive work environment." *Alfano*, 294 F.3d at 374. In addition, Plaintiff and the other dental assistants complained, but Defendant did nothing about it that could be construed as addressing the problem. The Court also finds that a reasonable trier of fact could find that Plaintiff was constructively discharged.

For the foregoing reasons, Defendant's Motion for Summary Judgment, [ECF No. 33], is DENIED.

IT IS SO ORDERED.

          /s/
Hon. Vanessa L. Bryant
United States District Judge

Dated at Hartford, Connecticut: November 5, 2019