# UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| **JENNIFER CHAMPAGNE,** | : | |
| **Plaintiff,** | : | |
| | : | **No. 3:18-cv-01390 (VLB)** |
| **v.** | : | |
| | : | |
| **COLUMBIA DENTAL, P.C.,** | : | **January 19, 2022** |
| **Defendant.** | : | |
| | : | |
| | : | |

## MEMORANDUM OF DECISION DENYING DEFENDANT'S MOTION FOR JUDGMENT AS A MATTER OF LAW OR FOR NEW TRIAL, [ECF NO. 119]

Before the Court is Defendant Columbia Dental, P.C.'s ("Defendant") Motion for Judgment as a Matter of Law or for New Trial. [ECF No. 119]. For the reasons set forth below, the Court DENIES Defendant's Motion.

### I.    Background

Plaintiff Jennifer Champagne ("Plaintiff") commenced this action against Defendant, initially alleging that Defendant engaged in sexual harassment, gender discrimination, and retaliation, in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. Section 2000e *et. seq.* [ECF No. 1]. On November 17, 2018, Plaintiff filed an amended complaint, eliminating allegations of gender discrimination and retaliation and pleading additional facts in support of her sexual harassment claim. [ECF No. 15]. On November 21, 2018, Defendant filed a Motion to Dismiss Plaintiff's Amended Complaint, [ECF No. 16], arguing, *inter alia*, that the Amended Complaint did not state a claim for which relief could be granted under Rule 12(b)(6). [ECF No. 16-1 at 4-14]. This was so, according to Defendant, because even though the

Amended Complaint alleged that Defendant's employee dentist Dr. John Stanko, DMD, "(1) threw items and raised his voice in a profane manner (without expressing the frequency of such actions); (2) referred to the plaintiff as his "hot assistant" and "daytime wife" (without expressing the frequency of such characterizations); (3) massaged the plaintiff's shoulders "several times;" (4) grabbed the plaintiff's hand during, and in connection with, a dental procedure; and (5) thrust a drill into the plaintiff's hand during, and in connection with, a dental procedure," none of those actions, "even when considered in the aggregate, constitutes sexual harassment." *Id.* at 7.

On May 8, 2019, in a Memorandum of Decision denying Defendant's Motion to Dismiss, the Court disagreed. [ECF No. 28]. After summarizing the Amended Complaint's factual allegations, the Court set forth the required legal standard, noting that Plaintiff's claim was that Defendant "created a hostile or offensive work environment." *Id.* at 8. The Court found that the allegations in the Amended Complaint "establishe[d] an objectively hostile work environment," *id.* at 10, for the following reasons:

> Here, Stanko threw and punched items in the office, and yelled and cursed during the course of Plaintiff's employment. *See* [Dkt. 15 at ¶¶ 19-20]. He also addressed Plaintiff as his 'hot assistant' and his 'daytime wife,' and massaged her shoulder several times. He engaged in arguably misogynistic conduct, namely forcefully grabbing her hand to force a tube into a patient's mouth, and jamming a drill into her hand, puncturing her glove, and angrily telling her to hold it in place. *Id.* at ¶¶ 21-22 & 30. Plaintiff complained to district manager Ochrim who did not address or attempt to remedy the issue. *Id.* at ¶¶ 40-41. Plaintiff told Ochrim that because of Stanko's behavior, she could not go back to work with him. In response, Ochrim advised Plaintiff that if she did not work with Stanko then she would not have a job. *Id.* ¶ at 29. On another occasion, Plaintiff complained and

Ochrim focused on her parental status responding, 'ok, but it's a job' and 'you do have kids.' *Id.* at ¶ 43. Plaintiff mentioned to other employees that because of Stanko's conduct her 'anxiety was through the roof.' *Id.* at ¶ 32.

None of these instances taken alone give rise to the conclusion that Plaintiff's work environment was permeated with discriminatory intimidation, ridicule and insult that was sufficiently severe to alter the conditions of her employment and create a hostile or offensive work environment. However, when taken in the aggregate, a reasonable fact finder could determine that the Plaintiff subjectively perceived the environment to be hostile and that her mistreatment was based on her gender.

*Id.* at 10-11.

The Court also found that the Amended Complaint's allegations supported Plaintiff's claim for constructive discharge, [ECF No. 15 ¶ 45], because the allegations provided "sufficient evidence that would lead a reasonable fact finder to conclude that Plaintiff found her work conditions to be intolerable," and because Defendant's "indifference to Plaintiff's complaints about Stanko may have contributed to the intolerable nature of Plaintiff's work conditions." [ECF No. 28 at 13].

On August 9, 2019, Defendant filed a Motion for Summary Judgment. [ECF No. 33]. Defendant first argued a procedural violation, namely, that "42 U.S.C. section 2000e-5(e)(1) require[d] that a petitioner alleging a discriminatory employment practice must file the charge thereof with the applicable governmental entity having jurisdiction over such charge within 300 days after the commission of such act that is the subject of the charge." [ECF No. 33-2 at 1]. Because Plaintiff undisputedly waited until January 2, 2018 to file her CHRO/EEOC complaint, the acts of sexual harassment had to have occurred no earlier than March 24, 2017. *Id.*

at 2.  This meant, according to Defendant, that only acts of harassment taking place between March 24 and March 27, 2017, when Plaintiff left Defendant's employ, could be considered when ruling on Defendant's Motion for Summary Judgment. *Id.* at 2-8.

Further, even if all the evidence adduced to date was considered, Defendant argued, it "d[id] not constitute, as a matter of law, sexual harassment."  *Id.* at 7-17.

Finally, Defendant argued that it did not constructively discharge Plaintiff because "[a] reasonable person in the plaintiff's position would not have perceived the plaintiff's working conditions so intolerable as to compel separation."  *Id.* at 17-19.

The Court disagreed.   First, the Court found, contrary to Defendant's argument, that all the evidence of a hostile work environment adduced to date could be considered in ruling on Defendant's Motion for Summary Judgment:

> Because this is a hostile work environment case, and not sexual harassment based on discrete acts, 'consideration of the entire scope of a hostile work environment claim, including behavior alleged outside the statutory time period, is permissible for the purposes of assessing liability, so long as any act contributing to that hostile environment takes place within the statutory time period.' [*AMTRAK v.*] *Morgan*, 536 U.S. [101,] 105 [2002].  At least two acts of harassment occurred within the statutory time period.   Namely, Dr. Stanko 'stabbed [Plaintiff] with [a] drill with a Bur at the end' on March 27, 2017, and Dr. Stanko separately threw a dental burr at plaintiff that same day.  [ECF No. 33-1 (Plaintiff's Deposition Transcript at 60-61)]. Defendant's argument, therefore, that the Court should ignore any acts that may have contributed to the hostile work environment Plaintiff was subjected to that occurred before March 24, 2017, is meritless.

[ECF No. 37 at 9].  Second, the Court found that "[a]nalyzing the evidence as a whole, as permitted by *Morgan*, the court concludes that a reasonable fact finder

could determine that Plaintiff was subjected to a hostile work environment." *Id.* Third, the Court found that "a reasonable trier of fact could find that Plaintiff was constructively discharged," and denied Defendant's Motion for Summary Judgment. *Id.* at 13.

After a series of delays associated primarily with the COVID-19 pandemic, the Parties proceeded to a jury trial, which occurred from November 16 to 30, 2021. [ECF Nos. 95-110].

On November 30, 2021, after the Parties had completed their cases-in-chief, Defendant asserted an oral motion for judgment as a matter of law under Federal Rule of Civil Procedure 50(a). Defendant based the motion on the grounds of insufficiency of the evidence supporting the constructive discharge and hostile work environment theories. After hearing Plaintiff's objection to Defendant's Motion, the Court denied the motion from the bench and explained in detail its reasoning for doing so. The Court's primary reason for denial was that Plaintiff had more than adequately testified to facts that would permit a reasonable jury, in its discretion, to find for Plaintiff. The Court then charged the jury.

On December 2, 2021, the jury returned a verdict for Plaintiff on her hostile work environment and constructive discharge claims, awarding Plaintiff $10,000.00 in compensatory damages and $100,000.00 in punitive damages. [ECF Nos. 110, 111].

After the Court excused the jury, the Court explained to the Parties that it would defer entering judgment until the Parties were afforded the opportunity to

brief the Court on the application of the Title VII statutory damages cap under 41 U.S.C. § 1981a, and gave Defendant until December 23, 2021 to file its brief, with Plaintiff having until January 13, 2022 to file a response to same.

The Court then asked the Parties if there would be any other post-trial briefs filed.  Plaintiff responded in the affirmative, explaining that a motion for attorneys' fees would be forthcoming at the appropriate time; Defendant responded in the negative.

On December 20, 2021, Defendant filed the instant Motion for Judgment as a Matter of Law or for New Trial but declined to address the matter of the statutory damages cap under 42 U.S.C. § 1981a.  [ECF No. 119].  Plaintiff responded on January 10, 2022, and included briefing, as requested, on the issue of the statutory damages cap.  [ECF No. 120].

For the following reasons, Defendant's Motion for Judgment as a Matter of Law or for New Trial, [ECF No. 119], is DENIED.

## II.   Legal Standard

Rule 50 of the Federal Rules of Civil Procedure provides in part that "[a] motion for judgment as a matter of law may be made at any time before the case is submitted to the jury."  Fed. R. Civ. P. 50(a)(2).  "The principal purpose of the requirement that any such motion be made before the case is submitted to the jury is 'to assure the responding party an opportunity to cure any deficiency in that party's proof.'"  *Lore v. City of Syracuse*, 670 F.3d 127, 152 (2d Cir. 2012) (quoting *Piesco v. Koch,* 12 F.3d 332, 340 (2d Cir. 1993)).  "To ensure that that opportunity

6

is a 'fair' one, *Piesco v. Koch,* 12 F.3d at 340, Rule 50(a) also provides that '[t]he motion *must specify* the judgment sought and *the law and facts that entitle the movant to the judgment.*'" *Id.* (quoting Fed. R. Civ. P. 50(a)(2) (emphases added by *Lore*)). "[T]he specificity requirement is obligatory," *id.* (quoting *Holmes v. United States,* 85 F.3d 956, 962 (2d Cir. 1996)), and "[a] Rule 50(a) motion requesting judgment as a matter of law on one ground but omitting another is insufficient to preserve a JMOL argument based on the latter." *Lore*, 670 F.3d at 152-53 (citing *Holmes*, 85 F.3d at 961–63).

"The standard governing motions for judgment as a matter of law ('JMOL') pursuant to Rule 50, formerly denominated motions for directed verdict or motions for judgment notwithstanding the verdict, is well established." *Galdieri-Ambrosini v. Nat'l Realty & Dev. Corp.*, 136 F.3d 276, 289 (2d Cir. 1998) (citing *Piesco*, 12 F.3d at 341 and *Samuels v. Air Transp. Local 504*, 992 F.2d 12, 14 (2d Cir. 1993)). "Judgment as a matter of law may not properly be granted under Rule 50 unless the evidence, viewed in the light most favorable to the opposing party, is insufficient to permit a reasonable juror to find in her favor." *Id.* (citing *Sir Speedy, Inc. v. L & P Graphics, Inc.*, 957 F.2d 1033, 1039 (2d Cir. 1992); *Vasbinder v. Ambach*, 926 F.2d 1333, 1339 (2d Cir. 1991)). "In deciding such a motion, the court must give deference to all credibility determinations and reasonable inferences of the jury, and it may not itself weigh the credibility of witnesses or consider the weight of the evidence." *Id.* (citing *Vasbinder*, 926 F.2d at 1340). "Thus, judgment as a matter of law should not be granted unless

(1) there is such a complete absence of evidence supporting the verdict that the jury's findings could only have been the result of sheer surmise and conjecture, or

(2) there is such an overwhelming amount of evidence in favor of the movant that reasonable and fair minded [persons] could not arrive at a verdict against [it]." *Id.* (quoting *Cruz v. Local Union No. 3*, 34 F.3d 1148, 1154 (2d Cir. 1994)).

"If the Rule 50(a) motion is not granted, the movant may, no later than 28 days after the entry of a judgment, 'file a *renewed* motion for judgment as a matter of law.'" *Lore*, 670 F.3d at 153 (quoting Fed. R. Civ. P. 50(b) (emphasis added by *Lore*). "However,

> [b]ecause the Rule 50(b) motion is only a renewal of the preverdict motion, it can be granted *only on grounds advanced in the preverdict motion. The earlier motion informs the opposing party of the challenge to the sufficiency of the evidence and affords a clear opportunity to provide additional evidence that may be available.* The earlier motion also alerts the court to the opportunity to simplify the trial by resolving some issues, or even all issues, without submission to the jury.

*Lore*, 670 F.3d at 153 (quoting Fed. R. Civ. P. 50 Advisory Committee Note (2006) (emphasis added by *Lore*); *see also id.* ("[a] post-trial motion for judgment can be granted only on grounds advanced in the pre-verdict motion") (citing Advisory Committee Note (1991); *Holmes,* 85 F.3d at 962).

"As to any issue on which proper Rule 50 motions were not made, JMOL may not properly be granted by the district court, or upheld on appeal, or ordered by the appellate court unless that action is required in order to prevent manifest

injustice." *Lore*, 670 F.3d at 153 (citing *Kirsch v. Fleet Street, Ltd.,* 148 F.3d 149, 164 (2d Cir. 1998); *Galdieri–Ambrosini,* 136 F.3d at 287).

"A court may grant a new trial 'for any reason for which a new trial has heretofore been granted in an action at law in federal court,' including if the verdict is against the weight of the evidence." *Raedle v. Credit Agricole Indosuez*, 670 F.3d 411, 417 (2d Cir. 2012) (quoting Fed. R. Civ. P. 59(a)(1)(A)). "[A] decision is against the weight of the evidence ... if and only if the verdict is [(1)] seriously erroneous or [(2)] a miscarriage of justice." *Id.* at 417-18 (quoting *Farrior v. Waterford Bd. Of Educ.,* 277 F.3d 633, 635 (2d Cir. 2002)); *see also DLC Mgmt. Corp. v. Town of Hyde Park*, 163 F.3d 124, 134 (2d Cir. 1998) ("A court considering a Rule 59 motion for a new trial ... should only grant such a motion when the jury's verdict is egregious.").

"On new trial motions, the trial judge may weigh the evidence and the credibility of witnesses and need not view the evidence in the light most favorable to the verdict winner." *Raedle*, 670 F.3d at 418 (citing *United States v. Landau,* 155 F.3d 93, 104 (2d Cir. 1998)). However, Second Circuit "precedent counsels that trial judges must exercise their ability to weigh credibility with caution and great restraint, as a judge 'should rarely disturb a jury's evaluation of a witness's credibility,' *DLC Mgmt.,* 163 F.3d at 134, and may not 'freely substitute his or her assessment of the credibility of witnesses for that of the jury simply because the judge disagrees with the jury.'" *Id.* (quoting *Landau,* 155 F.3d at 104). Indeed, the Second Circuit has stated that "[w]here the resolution of the issues depend[s] on assessment of the credibility of the witnesses, it is proper for the court to refrain from setting aside the verdict and granting a new trial." *Id.* (quoting *Metromedia*

9

*Co. v. Fugazy,* 983 F.2d 350, 363 (2d Cir. 1992)); *see also Landau,* 155 F.3d at 104–05 ("A jury's credibility assessments are entitled to deference.").

"The sum of the amount of compensatory damages awarded under [Title VII] for future pecuniary losses, emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life, and other nonpecuniary losses, and the amount of punitive damages awarded under this section, shall not exceed, for each complaining party--

(A) in the case of a respondent who has more than 14 and fewer than 101 employees in each of 20 or more calendar weeks in the current or preceding calendar year, $50,000;

(B) in the case of a respondent who has more than 100 and fewer than 201 employees in each of 20 or more calendar weeks in the current or preceding calendar year, $100,000; and

(C) in the case of a respondent who has more than 200 and fewer than 501 employees in each of 20 or more calendar weeks in the current or preceding calendar year, $200,000; and

(D) in the case of a respondent who has more than 500 employees in each of 20 or more calendar weeks in the current or preceding calendar year, $300,000."

42 U.S.C. § 1981a(b)(3).

### III.    Discussion

**Defendant asks the Court to provide it relief on four grounds:**

**(1) That the Court vacate, under Rule 50(b), in toto the compensatory and/or punitive damages awards because of insufficient evidence supporting either award;**

**(2) That the Court vacate, under the manifest injustice doctrine, in toto the compensatory and/or punitive damages awards because of insufficient evidence supporting either award;**

**(3) That the Court reduce, under Rule 50(b) and/or Rule 59(e), the punitive damages award because of insufficient evidence demonstrating malice or reckless indifference;**

**(4) That the Court order, under Rule 59(a)(1)(A), a new trial on all issues because of insufficient evidence supporting an award of punitive damages, or offer a remittitur to an appropriate amount.**

[ECF No. 119 at 1-2].

As an initial matter, the Court notes that Defendant does not address the one issue the Court invited Defendant to brief; namely, whether the jury's damages award exceeded the statutory cap set by 42 U.S.C. § 1981a(b)(3).  The Court also notes that when the Court inquired post-trial of Defendant whether briefing would be forthcoming on any other topics, Defendant answered in the negative. Nevertheless, the Court will address and adjudicate Defendant's unannounced motions for judgment as a matter of law pursuant to Federal Rule of Civil Procedure 50(b) and for new trial pursuant to Rule 59(a).

Defendant concedes that it is not <u>renewing</u> its Rule 50(a) motion for judgment as a matter of law asserted before the case went to the jury; rather, it argues <u>other grounds</u> for judgment and asks the Court to rule that these grounds are either "close enough" to the grounds it asserted in its Rule 50(a) motion, or that failure to grant the requested relief, and indeed the jury's very verdict in this case,

constitute "manifest injustice."  [ECF No. 119-1 at 2-11 ("[T]he matters raised in the Rule 50(b) motion need not be identical to those raised in the Rule 50(a) motion as long as the matters bear some connection to each other. . . . defendant's discussion of hostile work environment elements in connection with the Rule 50(a) motion hearing is sufficient to preserve for Rule 50(b) consideration the defendant's claims of the absence of actual and constructive notice. . . . As an alternative claim, if the Court declines to consider the defendant's Rule 50(b) motion for judgment as a matter of law on waiver grounds, it should entertain it on the basis of manifest injustice.")].  The Court disagrees on all points.

First, it is well-settled in this Circuit that a motion brought under Rule 50(b) is only a <u>renewal</u> of a previously asserted motion brought under Rule 50(a), and any claims not asserted in the Rule 50(a) motion are waived.  *Lore*, 670 F.3d at 153 ("[b]ecause the Rule 50(b) motion is only a renewal of the preverdict motion, it can be granted *only on grounds advanced in the preverdict motion.*") (emphasis in original).

Here, Defendant, pre-verdict, asserted only that there was insufficient evidence to establish that a hostile work environment existed, *i.e.*, that the individual acts of sexual harassment, when viewed in their entirety, constituted a hostile work environment, yet now asks the Court to find that there was insufficient evidence that Defendant <u>had notice</u> of a hostile work environment.  That claim is waived, and Defendant's argument that the Court should entertain it, despite Defendant's failure to raise it pre-verdict, is meritless.  Defendant cites *TVT Records v. Island Def Jam Music Group*, 412 F.3d 82 (2005), which Defendant claims

held that "matters raised in the Rule 50(b) motion need not be identical to those raised in the Rule 50(a) motion as long as the matters bear some connection to each other."  [ECF No. 119-1 at 2-3].  That is an inappropriate reading of *TVT Records*, which did not expressly or impliedly so hold, and which held only that the district court appropriately allowed a Rule 50(b) motion to proceed when the claim alleged was "duplicative" and "subsumed" the claim that was discussed in the Rule 50(a) motion.  Here, Defendant concededly did not address in its Rule 50(a) motion the insufficiency of the evidence as it pertains to its lack of notice claim, and that claim is not duplicative of or subsumed by the existence of a hostile work environment, which Defendant concedes is a separate element required for liability.  *See* [ECF No. 119-1 at 4-5 (arguing that "[i]f perpetrated by a nonsupervisory co-worker, the plaintiff must [separately] show that the employer knew or reasonably should have known about the [hostile work environment] harassment but failed to take appropriate remedial action.")].

Defendant also argues that "if the Court declines to consider the defendant's Rule 50(b) motion for judgment as a matter of law on waiver grounds, it should entertain it on the basis of manifest injustice," which "[a] party may assert . . . without raising previously a Rule 50(a) motion at all."  *Id.* at 11 (citing *ING Global v. United Parcel Serv. Oasis Supply Corp.,* 757 F.3d 92, 97 (2d Cir. 2014)).  "Such manifest injustice exists when the verdict 'is wholly without legal support.'"  *Id.* (quoting *ING Global*, 757 F.3d at 97).  The jury's finding that Defendant was on notice of the hostile work environment perpetrated by Dr. Stanko is manifestly unjust, *i.e.*, "wholly without legal support," *id.*, Defendant argues, because despite

Plaintiff testifying that she informed office manager Jolanta Ochrim, Cintia Legault, who testified that she worked as an office manager for a period of time, Ray Belisle, and scheduling supervisor of dental assistants Tarah Jameson about the hostile work environment she was suffering, she failed to follow the exact steps outlined in Defendant's sexual harassment policy guidance.  The Court disagrees.

First, Defendant admits that Plaintiff did provide evidence of notice, calling the evidence "conflicting" on this point.  [ECF No. 119-1 at 9].  Plaintiff argues that "Defendant's acknowledgement of the presence of 'conflicting evidence' ends defendant's argument and the motion for judgment as a matter of law on liability should be denied" because "[i]t is for the jury to decide if the plaintiff has proven a fact by a preponderance of the evidence."  [ECF No. 120 at 7].  The Court agrees with Plaintiff.  *See Galdieri-Ambrosini*, 136 F.3d at 289 ("judgment as a matter of law should not be granted unless there is such a complete absence of evidence supporting the verdict that the jury's findings could only have been the result of sheer surmise and conjecture.").

Moreover, Defendant's argument that Plaintiff's informing four of its employees about Dr. Stanko's harassment, two of which were office managers and one of which, Jolanta Ochrim, had responsibility for "safety," [ECF No. 119-1 at 8], constitutes insufficient notice, is callous in the extreme.  What Defendant is arguing is that no matter how egregious the sexual harassment, and no matter who the victim informed, a plaintiff's hostile work environment claim must fail if the technicalities of the employer's sexual harassment policy are not followed to the letter, and, in fact, failure to grant Defendant judgment as a matter of law in such a

14

case would constitute "manifest injustice."  The Court refuses to countenance such a result, especially considering Defendant's failure to even provide its sexual harassment policy to Dr. Stanko or train him on it.  Plaintiff thus argues that the policy Defendant now relies on was, in effect, mere "window dressing and plaintiff['s] multiple reports to multiple employees put the defendant on notice." [ECF No. 120 at 9].  The Court agrees.

Moreover, there exists a logical inconsistency in Defendant's argument. Tellingly, Defendant does not in any way renew its motion for judgment as a matter of law, which it asserted in its Rule 50(a) motion, that there was insufficient evidence to support the jury's verdict for Plaintiff on constructive discharge. Defendant thus concedes that the Court was correct in denying Defendant's Rule 50(a) motion that there was insufficient evidence for the jury to find constructive discharge.  But a constructive discharge is only a more egregious type of hostile work environment; it is one that not only impermissibly constitutes a violation of Title VII based on sexual harassment but is also one where the harassment got so bad that the employee reasonably felt that she had no choice but to discontinue working for that employer.  Here, by conceding the constructive discharge claim, Defendant has thus also logically conceded Plaintiff's hostile work environment claim, including as it must the requirement that Defendant was on notice of the hostile environment but failed to take appropriate action.

For the foregoing reasons, the Court DENIES Defendant's Rule 50(b) motion for judgment as a matter of law regarding Plaintiff's hostile work environment claim on both waiver and lack of manifest injustice grounds.

Defendant next moves under Rule 50(b) for judgment as a matter of law because "there is insufficient evidence to render the defendant liable for punitive damages."  [ECF No. 119-1 at 11].

Defendant fails to address the fact that Defendant did not raise this argument in its pre-verdict Rule 50(a) motion.  Defendant's failure to raise this claim in its Rule 50(a) Motion is fatal to its claim here, as Defendant has waived this argument. *See Cruz*, 34 F.3d at 1155 ("The rule is well established that a motion for directed verdict at the close of all the evidence is a prerequisite for judgment as a matter of law [and] this procedural requirement may not be waived as a mere technicality.") (citations omitted).  Moreover, Defendant also fails to argue that the Court should grant its motion on "manifest injustice" grounds, which is the only avenue open to it if it failed to raise the issue in its Rule 50(a) motion.  *Lore*, 670 F.3d at 153 ("As to any issue on which proper Rule 50 motions were not made, JMOL may not properly be granted by the district court, or upheld on appeal, or ordered by the appellate court unless that action is required in order to prevent manifest injustice.") (citing *Kirsch,* 148 F.3d at 164; *Galdieri–Ambrosini,* 136 F.3d at 287).

For these reasons, Defendant's motion for judgment as a matter of law that there was insufficient evidence to support the jury's verdict awarding punitive damages fails and must be DENIED.

Even if, however, Defendant had argued that the jury's verdict in this regard constituted "manifest injustice," the Court would still deny it.  Defendant argues that the jury could not have found that it "engaged in a discriminatory practice or

16

discriminatory practices with malice or with reckless indifference to the federally protected rights of an aggrieved individual," a requirement for awarding punitive damages, [ECF No. 119-1 at 12 (quoting 42 U.S.C. § 1981a(b)(1))], because (1) "'malice' or 'reckless indifference' pertain to the employer's knowledge that it may be acting in violation of federal law, not simply its awareness that it is engaging or has engaged in discrimination," (2) Defendant's published sexual harassment policy "goes a long way toward refuting a claim of a malicious or reckless state of mind," and (3) Plaintiff's complaining to four of Defendant's employees who may not have been aware that the hostile work environment that Defendant now concedes existed violated Title VII was insufficient to show malice on Defendant's part.

Defendant's arguments are unavailing.  First, Defendant's ignoring of Plaintiff's complaints of sexual harassment to four different employees of Defendant, at least two of whom had supervisory responsibilities and one of whom was responsible for, *inter alia*, "safety," could have been seen by the jury as malicious or recklessly indifferent to Plaintiff's rights, especially since the reports occurred over a six-month period from October 2016 to March 2017.  Second, the argument that Defendant's sexual harassment policy immunized it from an award of punitive damages rings hollow, especially in this case where Defendant failed to even provide it to the very person who inflicted the hostile work environment on Plaintiff.  Third, the argument that Defendant is not liable for punitive damages because it, or its supervisory employees, did not know that an actual hostile work environment could constitute a violation of Title VII is meritless.

17

For the foregoing reasons, the Court DENIES Defendant's Rule 50(b) motion for judgment as a matter of law regarding the jury's award of punitive damages on waiver, lack of manifest injustice, and substantive grounds.

At the very end of this section of Defendant's brief, Defendant argues that "[i]f the Court declines to proceed under Rule 50(b) to vacate the entire award of punitive damages, it should reduce significantly the amount thereof by offering a remittitur."  [ECF No. 119-1 at 18].  As Defendant provides no factual or legal basis for the Court to do so, the Court declines.

Next Defendant argues that the Court should award a new trial on punitive damages or at least order a remittitur, citing (1) Plaintiff's contradictory testimony on several instances of Dr. Stanko's sexual harassment, which makes it "difficult to discern how the defendant could have been aware of such complaints, and, moreover, how the defendant could have harbored an evil motive, malice, or reckless indifference to the plaintiff's federally protected rights in connection therewith," and (2) legal precedent holding that a new trial or remittitur of punitive damages is often appropriate because "[f]ew awards exceeding single digit ratios between the size of the punitive and compensatory damages awards will satisfy due process."  [ECF No. 119-1 at 18-31 (citing, *inter alia*, *Stampf v. The Long Island R.R. Co.,* 761 F.3d 192, 210 (2d Cir. 2014)].

Plaintiff counters that, as to Plaintiff's credibility:

Defendant argues that plaintiff's testimony raised credibility issues. Defendant devoted a good deal of time in closing argument discussing what it perceived to be plaintiff's credibility issues.  Defendant argued something it called the 'credibility index'.   The jury rejected

18

**defendant's argument.   The jury found plaintiff credible.   The credibility of witnesses is exclusively for the determination by the jury.** [ECF No. 120 at 9 (citing *United States v. Richter*, 826 F.2d 206, 208 (2d Cir. 1987)]. The Court agrees with Plaintiff.

First, while it is true that on a motion for new trial "the trial judge may weigh the evidence and the credibility of witnesses and need not view the evidence in the light most favorable to the verdict winner," *Raedle*, 670 F.3d at 418 (citing *Landau,* 155 F.3d at 104), longstanding Second Circuit "precedent counsels that trial judges must exercise their ability to weigh credibility with caution and great restraint, as a judge 'should rarely disturb a jury's evaluation of a witness's credibility,' *DLC Mgmt.,* 163 F.3d at 134, and may not 'freely substitute his or her assessment of the credibility of witnesses for that of the jury simply because the judge disagrees with the jury.'" *Id.* (quoting *Landau,* 155 F.3d at 104).   Indeed, the Second Circuit has stated that "[w]here the resolution of the issues depend[s] on assessment of the credibility of the witnesses, it is proper for the court to refrain from setting aside the verdict and granting a new trial." *Id.* (quoting *Fugazy,* 983 F.2d at 363); *see also Landau,* 155 F.3d at 104–05 ("A jury's credibility assessments are entitled to deference.").

Here, the Court has little trouble deciding that the jury's assessment that plaintiff was credible was warranted.   Plaintiff's demeanor on the witness stand seemed sincere, and Defendant's witnesses, consisting as they did of current employees of Defendant, Dr. Stanko, who the jury found perpetrated the hostile work environment against Plaintiff, and Dr. Stanko's wife, all had reason to be

biased in favor of Defendant, which the jury could have reasonably considered in assessing Plaintiff's, and Defendant's witnesses', credibility.

Further, while the Defendant's employees were not exactly forthcoming in their testimony, they did substantiate many of Plaintiff's contention that she complained about her treatment and her complaints were conveyed to higherups. In one written exchange between Plaintiff and her scheduling supervisor, the supervisor stated she reported Plaintiff's complaints and the matter was being addressed; and Plaintiff responded that there was some improvement.  However, Dr. Stanko denied Defendant addressed the matter; and Defendant never addressed the matter with Plaintiff.  From this testimony, the jury could have reasonably inferred that Defendant's management was aware of Plaintiff's plight and ignored it, failing to take any steps to intervene or to investigate.

 In addition, largely Defendant relies on inconsistence in the dates on which Plaintiff testified events occurred and the dates on which she said they occurred in her earlier sworn statements.  These are technicalities.  It is not unusual for witnesses not to remember the precise dates of events and the discrepancies were not egregious.  This is particularly true here, where the events were recurring and numerous throughout Plaintiff's tenure with Defendant.

For the foregoing reasons, the Court declines to grant Defendant's motion for a new trial or for remittitur of the punitive damages award, on this basis.

As to the second basis for granting a new trial or remittitur, Plaintiff argues that "[o]n the issue of excessiveness, comparing punitive damage awards in other

cases where employers were found liable for discrimination and/or retaliation, is of limited utility because a wide range of awards have been upheld." [ECF No. 120 at 12 (quoting *Hill v. Airborne 590 Freight Corp.*, 212 F. Supp. 2d 59, 77 (E.D.N.Y. 2002) (collecting cases upholding punitive awards between $10,000 and 1.25 million))].

Additionally, Plaintiff argues that in *Cush-Crawford v. Adchem Corp.*, 271 F.3d 352 (2d Cir. 2001), "the Second Circuit upheld the jury's award of $100,000 in punitive damages where the jury did not award plaintiff actual or nominal damages. Cush-Crawford was a sexual harassment – hostile work environment claim brought under Title VII." [ECF No. 120 at 12]. Thus, in light of Dr. Stanko's conduct, which was so bad that it constituted a hostile work environment and resulted in Plaintiff's constructive discharge, which Defendant does not contest, the jury's punitive damages award, Plaintiff argues, was appropriate. *Id.* at 11-12. The Court agrees.

It is well-settled that "[o]nly where an award would 'shock the judicial conscience and constitute a denial of justice,' for example because it would 'result in financial ruin of the defendant' or 'constitute a disproportionately large percentage of a defendant's net worth' and thereby violate due process, should the court reduce an award of punitive damages to below the appropriate [Title VII] cap." *Luciano v. Olsten Corp.*, 110 F.3d 210, 221 (2d Cir. 1997). Defendant's argument that punitive damages awards exceeding a single digit ratio are inappropriate is not well taken in light of the Supreme Court's opinion in *BMW of North America, Inc. v. Gore*, 517 U.S. 559 (1996), on which Defendant relies heavily, and which held that "we have consistently rejected the notion that the constitutional line is marked by a simple mathematical formula," and found that "low awards of compensatory

21

damages may properly support a higher ratio than high compensatory awards, if, for example, a particularly egregious act has resulted in only a small amount of economic damages [or] in cases in which the injury is hard to detect or the monetary value of noneconomic harm might have been difficult to determine." *Id.* at 582.

This is not a case where the proportionality of compensatory to punitive damages is appropriate.  For reasons unknown to the jury or the Court, Plaintiff chose not to seek monetary damages for lost wages, despite having been constructively discharged.  The jury did hear testimony that Plaintiff is the mother of a young child, and after her constructive discharge, declined another position as a dental assistant and worked on weekends.  Plaintiff's decision not to request lost wages and the resulting paltry award of monetary damages does not reflect the banality of Defendant's conduct.

In sum, the Court holds that the case law does not support reducing the amount of punitive damages awarded by the jury or granting a new trial.  This is supported by Plaintiff's briefing on the statutory cap issue, in which Plaintiff shows that Defendant's own documents establish that, at the relevant time, Defendant had 253 employees, which means that the statutory cap on the combination of compensatory and punitive damages was $200,000, an amount significantly higher than that awarded by the jury.  [ECF No. 120 at 1; Ex. 1]; *see also* 42 U.S.C. § 1981a(b)(3)(C) (Title VII statutory cap on combined compensatory and punitive damages is, "in the case of a respondent who has more than 200 and fewer than

501 employees in each of 20 or more calendar weeks in the current or preceding calendar year, $200,000.").

IV.   <u>Conclusion</u>

For the foregoing reasons, Defendant's Motion for Judgment as a Matter of Law or for New Trial, [ECF No. 119], is DENIED.  Plaintiff shall have seven days from the date of this Order to file her motion for attorneys' fees, if desired.

IT IS SO ORDERED.

_____/s/_____
Hon. Vanessa L. Bryant
United States District Judge

Dated this day in Hartford, Connecticut: January 19, 2022