**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

| | | |
|---|---|---|
| JENNIFER CHAMPAGNE, | : | |
| Plaintiff | : | Case No. 3:18-cv-03190 (VLB) |
| | : | |
| v. | : | |
| | : | |
| COLUMBIA DENTAL, P.C., | : | |
| Defendant | : | February 14, 2022 |

**MEMORANDUM OF LAW**
**IN OPPOSITION TO**
**MOTION FOR ATTORNEY'S FEES**

The defendant in the above-entitled action hereby submits the following

memorandum of law in opposition to the plaintiff's motion, dated January 25, 2022, for

attorney's fees.

The legal foundation for the taxation of counsel fees is set forth in 42 U.S.C.

section 2000e-5(k), which provides that "[i]n any action or proceeding under this

subchapter the court, in its discretion, may allow the prevailing party, other than the

Commission or the United States, a reasonable attorney's fee (including expert fees) as

part of the costs, and the Commission and the United States shall be liable for costs the

same as a private person."

The most salient elements of section 2000e-5(k) with respect to the present

proceeding are "discretion," "prevailing party," and "reasonable."  These terms imply,

first, that the court may exercise its discretion in whether to make such an award, and, if so, the amount thereof.  Second, the court may make such award only to the party that essentially wins the case.  Third, any award so fashioned must be reasonable, the guidelines for which standard are discussed infra.

One of the earliest and most influential and oft-cited precedents construing section 2000e-5(k) is *Johnson v. Georgia Highway Express, Inc.,* 488 F.2d 714 (5th Cir. 1974), in which the court set out the following twelve criteria to apply in the evaluation of motions for the taxation of counsel fees under federal fee-shifting statutes:

1.  The time and labor required.  "The trial judge should weigh the hours claimed against his own knowledge, experience, and expertise of the time required to complete similar activities . . . [i]t is appropriate to distinguish between legal work, in the strict sense, and investigation, clerical work, compilation of facts and statistics and other work which can often be accomplished by non-lawyers but which a lawyer may do because he has no other help available.  Such non-legal work may command a lesser rate.  Its dollar value is not enhanced just because a lawyer does it."  *Id.* at 717.

2.  Novelty and difficulty of the question.  This factor applies more to cases of first impression.  *Id.* at 718.

3. The skill required to perform properly the representation. "The trial judge should closely observe the attorney's work product, his preparation, and general ability before the court." *Id.*

4. The preclusion of other employment. *Id.*

5. The customary fee assessed by counsel. The court felt that the customary fees for similar work in the same community may inform this criterion. *Id.*

6. Whether the fee arrangement is fixed or contingent. The court commented that an award of counsel fees never should exceed what the plaintiff-client was contractually bound to pay. *Id.*

7. Time limitations. "Priority work that delays the lawyer's other legal work is entitled to some premium." *Id.*

8. The amount involved and results obtained. The court should consider "the amount of damages, or back pay awarded . . . " *Id.*

9. The experience, reputation and ability of counsel. The court felt that more extensive experience and ability merit a higher award. *Id.* at 718-19.

10. The undesirability of the case. The court commented that civil rights undertakings are often the subject of obloquy from the community. *Id.* at 719.

11. The nature and length of the attorney-client relationship. *Id.*

**12. Awards in similar cases.**  The court observed that district courts may compare the case at bar with awards in similar cases within and without the circuit.  *Id.*

*Johnson* admonished, at page 719, that courts "do not have a mandate under Section 706(k) [of the Civil Rights Act of 1964] to make the prevailing counsel rich."

The most significant subsequent development in the formulation of counsel fee jurisprudence was the U.S. Supreme Court decision in *Hensley v. Eckerhart,* 461 U.S. 424 (1983).  At issue there was whether and to what extent the results obtained should effect an award of counsel fees under 42 U.S. section 1988.

The Court in *Hensley* defined a "prevailing party" under section 1988, applicable likewise to the same phrase in section 2000e-5(k), as one which succeeds on any significant issue which achieves some of the benefit it sought in bringing the suit.  *Id.* at 433.

It is here in *Hensley* where the lodestar method most probably acquired its notoriety.  "The most useful starting point for determining the amount of a reasonable fee is the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate."  *Id.*  Further, "[h]ours that are not properly billed to one's *client* also are not properly billed to one's *adversary* pursuant to statutory authority."  *Id.* at 424 (emphasis

in original).  Still further, the plaintiff bears the burden of demonstrating the number of reasonable hours and what constitutes a reasonable rate.  *Id.* at 437.

The Court devoted a significant portion of the opinion to the concept of divisibility, or, precluding awards for work expended in pursuit of an unsuccessful claim if such claim is unrelated to a successful claim.  A "[r]educed fee award is appropriate if relief, however significant, is limited in comparison to the scope of the litigation as a whole." *Id.* at 440.

The next significant development in the chronology of fee award jurisprudence, at least in the Second Circuit, probably is *Arbor Hill Concerned Citizens Neighborhood Association v. County of Albany,* 522 F.3d 182 (2d Cir. 2008).  There the court effectively abandoned the lodestar terminology: "[t]he meaning of the term 'lodestar' has shifted over time, and its value as a metaphor has deteriorated to the point of unhelpfulness. This opinion abandons its use."  *Id.* at 190.  "The focus of the district courts is no longer on calculating a reasonable *fee,* but rather on setting a reasonable hourly rate, taking account of all case-specific variables."  *Id.* at 189 (emphasis in original).

"The reasonable hourly rate is the rate a paying client would be willing to pay.  In determining what rate a paying client would be willing to pay, the district court should consider, among others, the *Johnson* factors; it should also bear in mind that a

reasonable, paying client wishes to spend the minimum necessary to litigate the case effectively.  The district court should also consider that such an individual might be able to negotiate with his or her attorneys."  *Id.* at 190.  Such reasonable hourly rate established as a result of the foregoing analytical framework constitutes the "presumptively reasonable fee."  *Id.*

The plaintiff asserts on page 4 of her January 25, 2022 memorandum in support of her motion that "[t]he jury trial was hotly contested."  The defendant submits that most trials are significantly contested, the instant one constituting no exception.  The plaintiff continues on page 4 by opining that "d]efendant asserted a high volume of evidentiary objections," and on page 8 states "[t]here were a large number of evidentiary objections raised by defense counsel and plaintiff counsel's skill level successfully dealt with the objections."  The defendant disputes such fanfaronade.  First, we do not share the inference that the defendant raised a plethora of frivolous objections, or many objections at all, and, in any event, that responding to objections should assume any importance in the evaluation of a request for counsel fees.  The defendant further disputes that plaintiff's counsel constantly rebuffed such objections.  Although there occurred several defense objections throughout the trial, a couple are more salient.  At one point during the plaintiff's direct examination of Tarah Jameson, the plaintiff inquired whether she

herself had ever been the subject of a massage by Dr. Stanko, which question elicited an immediate objection, but not before the witness had blurted out an affirmative response. The court properly sustained the objection, and then admonished the plaintiff for her attempted elicitation of irrelevant and highly prejudicial evidence. Somewhat later during such examination the plaintiff began inquiring of Jameson about certain text messages she said she had exchanged with other employees concerning the plaintiff. After the defendant's objection, the court inquired of the plaintiff the purpose underlying such line of interrogation, to which counsel responded that he was "interested" in these various text messages that apparently Jameson had not recalled during the plaintiff's prior deposition of her. The court properly terminated such line of interrogation, admonished counsel that such evidence does not imply that the defendant was aware of such inter-employee communications, and issued to the jury a curative instruction to disregard such evidence. Unfortunately, all the curative instructions in the world probably would have failed to achieve their salutary purpose of eradicating the indelible impressions stamped in the minds of the jurors. Thus, the jury, as a result of this experienced plaintiff's litigator's imprecise questioning, heard that Jameson had been the subject of a shoulder massage, and that Jameson had exchanged text messages with her colleagues about the plaintiff and Dr. Stanko. The defendant, naturally, was not about to start cross-

examining Jameson to probe the details of her alleged shoulder massage and text messages, which evidence had been ruled irrelevant, and which evidence in good likelihood tainted or at least improperly informed the verdict.  This same counsel now wants to be rewarded $50,850.00 for such conduct, contending he deserves it because he claims he successfully rebuffed the defendant's evidentiary objections.

The defendant disputes the plaintiff's inclusion in her time records, attached as exhibit 2 of her memorandum, of her November 17, 2018 entry of one hour to draft the amended complaint.  The plaintiff originally advanced counts in her complaint, dated August 14, 2018, of gender harassment, gender discrimination and retaliation.  After the defendant filed its motion to dismiss all three counts on September 26, 2018, the plaintiff unilaterally and voluntarily amended her complaint to delete the second and third counts sounding in gender discrimination and retaliation, impliedly acknowledging thereby that no probable cause existed to support those counts, which knowledge the plaintiff must have possessed prior to her filing and service of that original complaint.  The plaintiff clearly was not  a prevailing party on those deleted counts.  Query whether the defendant should be awarded counsel fees for effectively successfully moving to dismiss such second and third counts.

The defendant also disputes the plaintiff's requested hourly rate of $450.00. By plaintiff's own admission in her memorandum, dated January 25, 2022, in support of her motion for counsel fees, that figure rests atop the extreme high end of the ranges discussed in such memorandum.

On page 8 of the plaintiff's memorandum she states that she "succeeded on all the issues she presented to the jury. Plaintiff sought compensatory damages and punitive damages from the jury." The plaintiff sought, however, much more at the outset of this entire proceeding. As just discussed supra, the plaintiff originally pleaded three counts, and then amended out two of such counts. In such amended complaint, dated November 17, 2018, the plaintiff sought "compensatory damages; damages for back pay, front pay, bonuses, personal days, lost pension/retirement benefits; emotional distress; punitive damages; reasonable attorney's fees; costs; interest; prejudgment interest; post judgment interest; for an injunction requiring the removal of any and all adverse information contained in plaintiff's personnel file; . . . " The plaintiff's claims for "back pay, front pay, bonuses, personal days, [and] lost pension/retirement benefits," for whatever reason, evaporated during the trial. The defendant spent time and resources, notably time during the plaintiff's deposition, and additional time in preparing for and pursuing during the plaintiff's cross examination the matter of back pay eligibility and

mitigation of damages.  The plaintiff cannot claim to be a prevailing party concerning those claims.  The plaintiff never achieved an injunction requiring the removal of the aforementioned information.  The activity descriptions contained in the plaintiff's time records, attached as exhibit 2 to her memorandum, are just vague enough to preclude an accurate ascertainment of whether any of such activities were expended toward the attainment of such unrealized claims for relief.  In the defendant's view, the plaintiff achieved only partial or limited success, meriting a decrease in the demanded hourly rate.

*Arbor Hill,* 522 F.3d at 190, instructs that the presumptively reasonable fee is premised on what a paying client would be willing to pay.  The retainer agreement, exhibit 1 to the plaintiff's memorandum, specifies engagement "on a contingency fee basis.  If no recovery is made, the Client shall not owe any sum as attorney's fees other than the $2,500.00."  Thus, the fact that the plaintiff never agreed to pay her counsel $450.00 per hour implies significantly that the plaintiff was unwilling to pay such a rate.  Counsel's affidavit fails to mention that the plaintiff actually paid anything more than the original $2,500.00.  Such $450.00 rate expressed in the retainer agreement is not dispositive.  *Blanchard v. Bergeron,* 489 U.S. 87, 92 (1989).

A court may reduce the lodestar amount by an appropriate percentage to reflect case-specific considerations such as failure to achieve any part of the original objectives of the action. *Barfield v. New York City Health & Hospitals Corporation,* 537 F.3d 132 (2d Cir. 2008). If the plaintiff achieved only a partial or limited success, the product of the hours reasonably expended on the entire scope of the litigation times the reasonable hourly rate may be an excessive amount, even where the plaintiff's claims were interrelated, non-frivolous and made in good faith. *Hensley v. Eckerhart,* 461 U.S. 424, 436 (1983). In such a situation, perhaps the most appropriate method of incorporating such diminished result variables is through adjustment of either the number of hours or the hourly rate. *Miller v. Metro-North Railroad Company,* 658 F.3d 154, 166 (2d Cir. 2011).

In the present proceeding the plaintiff waived mid trial, or at least failed to pursue, her claims for back pay, and never pursued her original claim for front pay or reinstatement, perhaps because she calculated that her rejection of a dental assistant job offer within the first six months post-separation might have constituted a lack of mitigation. The plaintiff possessed this information prior to drafting the original and amended complaints and commencing suit. In any event, the plaintiff obtained only two elements of relief.

Small to medium sized firms, of which the plaintiff's counsel is a member, where fees typically are lower, typically merit lower hourly rates. *Chamblee v. Masters, Mates & Pilots Pension Plan,* 885 F.2d 1053, 1058-9 (2d Cir. 1989).

In *Lilley v. City of New York,* 934 F.3d 222, 231 (2d Cir. 2019), the court, although approving an hourly rate of $450.00 under the factual circumstances extant in that action, recognized a range of $350.00 to $450.00 in the Southern District of New York for fairly straightforward civil rights actions.

In a labor relations case, the District Court awarded the plaintiff's counsel, a partner at a small firm, $250.00 per hour, which counsel had sought. *New York City & Vicinity District Council of Carpenters v. Plaza Construction Group, Inc.,* No. 1:156-cv-1115-GHW (S.D.N.Y. July 19, 2016). "In the Southern District of New York, fee rates for experienced attorneys in small firms generally range from $250 to $450 in civil cases." *Id.* at 3.

In *Doe v. East Lyme Board of Education,* No. 3:11-cv-291 (JBA) (D. Conn. March 17, 2020), the District Court awarded counsel fees of $375.00 per hour.

In *Montanez v. Simon,* 755 F.3d 547, 554-5 (7th Cir. 2014), the court approved in a section 1983 action an hourly rate of $385.00 for experienced civil rights counsel. The court observed that a reasonable hourly rate should be based on the local market rate,

which is what counsel actually bills for similar work.  *Id.* at 553.  If that data is unavailable, the court may use rates of similarly experienced counsel in the community and rates set for subject counsel in similar cases.  *Id.*  The plaintiff bears the burden of demonstrating the market rate.  *Id.*  The plaintiff in the instant proceeding offered no evidence of the greater Hartford market rate, nor the rate that counsel assesses to paying clients in other similar types of cases.

In *Bergerson v. New York State Office of Mental Health,* 652 F.3d 277 (2d Cir. 2011), the court approved in a Title VII gender harassment case a $210.00 per hour rate as appropriate in the Northern District of New York.

The plaintiff must adduce specific evidence of the prevailing community rate for civil rights work, such as affidavits from other similarly qualified counsel reciting fees that they have received from paying clients in comparable matters.  *National Association of Concerned Veterans v. Secretary of Defense,* 675 F.2d 1319, 1326 (D.C. Cir. 1982). Further evidence includes rates that counsel can command in the relevant market; rates at which he actually billed his time in other cases during the relevant period, indicating the average amount counsel actually received; and fees earned both in cases won and lost where counsel is proceeding on a contingency fee agreement.  *Id.* at 1326-7.

The plaintiff has failed to demonstrate here any of the foregoing evidence.  She has failed to show the Hartford county rate for civil rights cases for counsel holding comparable qualifications.  She has failed to show what counsel has earned and charged in other similar cases.  All the plaintiff produced in support of her request for a $450.00 hourly rate is a retainer agreement disclosing that rate (which the plaintiff is not even obligated to pay), and a self-serving affidavit proclaiming counsel's experience and affirming the accuracy of the number of hours expended.  42 U.S.C. section 2000e-5(k) is a fee-shifting statute, not a fee-generating statute.  If the plaintiff-client has not actually paid the fee, and is not even liable to pay it, then there exists no fee to shift, only fees that the plaintiff's counsel now seeks to extract anew from the defendant.

Evaluating the plaintiff's request against the *Johnson* factors, we can discern the following:

1.  Regarding the time and labor required, the time records show an excess of one hour, as discussed supra.

2.  The second criterion concerning the novelty and difficulty of the questions is inapplicable.  The instant matter was not one of first impression and involved a fairly straightforward gender harassment claim.

3.  Regarding the skill required to perform properly the representation, "[t]he trial judge should closely observe the attorney's work product, his preparation, and general ability before the court." *Johnson v. Georgia Highway Express, Inc.,* 488 F.2d at 717. The defendant feels that, consistent with the discussion supra concerning counsel's pretrial and trial conduct, that this criterion does not support an award at the uppermost end of the range, specifically $450.00.

4.  As to the fourth criterion concerning the preclusion of other employment, the plaintiff's affidavit is silent thereon.

5.  Regarding the fifth criterion - the customary fee assessed by counsel for similar work in the same community - the plaintiff's affidavit fails to contain any evidence regarding such fees.

6.  The retainer agreement implies that the fee arrangement was contingent. Following strictly this sixth criterion would result in a reduction, as the award the plaintiff seeks is greater than what she would receive by way of one-third of the total amount of the verdict.  This criterion militates in favor of capping such award accordingly.

7.  As to the time limitations subject of the seventh criterion, the affidavit is silent regarding same.

8.  The eighth criterion considers the amount involved and the results obtained. As prior portions of this memorandum discuss, the plaintiff achieved only partial or limited success as compared to all of the causes of action and relief she originally pleaded.  This criterion militates in favor of a reduction built into the presumptively reasonable rate.

9.  The affidavit recites counsel's experience; it is silent as to counsel's reputation and ability.  The plaintiff did not supplement the affidavit with sworn affirmations from other counsel extolling counsel's reputation and ability.  The court can render its own assessments concerning the ability factor.

10. The tenth criterion – the undesirability of the case – is inapplicable here.  There exists  no evidence that the plaintiff was required to prosecute the subject action against a background of social obloquy.

11.  As to the eleventh criterion - the nature and length of the attorney-client relationship - the affidavit is silent.

12. Regarding the twelfth criterion - awards in similar cases - the affidavit is silent. The plaintiff offers no evidence of awards in cases very similar to the subject case.  The memorandum recites fee awards rendered in several cases not necessarily similar to the instant action.

Evaluating the aforementioned *Johnson* factors demonstrates that none of them militate in favor of supporting an hourly rate at or beyond the highest end of the range. If anything, an evaluation of such factors militates in a reduction,

In summary, the defendant believes that the court should award no fees, in part for the following reasons. First, the plaintiff, despite bearing the burden thereof, has adduced no evidence to demonstrate the market rate or that rate which a reasonable paying client would pay. The plaintiff furnished as exhibit 1 the retainer agreement, which expressly absolves the plaintiff-client of any responsibility to pay anything except a percentage of her recovery, which percentage obviously is not based on $450.00 per hour. The plaintiff's documents are devoid of any evidence supporting the market hourly rate in the relevant community,

Second, the plaintiff achieved only limited or partial success. She failed to achieve most of her original claims, and deleted from her amended complaint two of her original causes of action.

Third, the plaintiff should not be rewarded for counsel's trial conduct in slipping into evidence inadmissible and quite possibly prejudicial evidence. Such conduct, as well as other inartful questions, prompted the defendant's objections. Regardless, the

mere fact that counsel was required to respond to evidentiary objections should not constitute the basis to support a $450.00 hourly rate.

If the court does elect in its discretion to award counsel fees, it should establish the presumptively reasonable hourly rate at a maximum of $200.00, and multiply same by the number of hours it finds to have been reasonably expended in pursuit of the only claims on which the plaintiff prevailed, which number of hours the defendant submits should be less than one hundred thirteen. It is clearly somewhat difficult to discern what number or percentage of such claimed hours is allocable to expenditures toward unsuccessful objectives, but the defendant posits that an appropriate estimated percentage would be a fifty percent reduction, or a reduction of fifty-six hours.

Defendant

By____/s/ Thomas A. Amato_____
    Thomas A. Amato
    357 East Center Street
    Manchester, CT 06040
    Telephone: 860-643-0318
    Facsimile: 860-643-2725
    Email: AmatoLaw@att.net
    Federal bar number ct14221
    Its Attorney

This is to certify that a copy of the foregoing was filed electronically and served via regular mail on any party unable to accept service via electronic filing. Notice of this filing will be sent by electronic mail to all parties by virtue of the Court electronic filing system or via regular mail to any party unable to accept electronic filing as set forth in the Notice of Electronic Filing, accessible through the Court's CM/ECF system; on February 14, 2022.

_____/s/ Thomas A. Amato_____
Thomas A. Amato