UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| JENNIFER CHAMPAGNE,<br>    Plaintiff, | :<br>: | |
| | : | No. 3:18-cv-01390 (VLB) |
| v. | :<br>: | |
| COLUMBIA DENTAL, P.C.,<br>    Defendant. | :<br>:<br>: | March 30, 2022 |

MEMORANDUM OF DECISION ON
PLAINTIFF'S MOTION FOR ATTORNEYS' FEES [ECF NO. 122]

Before the Court is Plaintiff's Motion for Attorney's Fees. Plaintiff Jennifer Champagne brought a Title VII action against her former employer, Defendant Columbia Dental P.C. ("Columbia Dental") and secured a jury verdict in her favor on December 20, 2021. The jury awarded Ms. Champagne $10,000 for emotional distress and $100,000 in punitive damages. Now Ms. Champagne seeks attorneys' fees of $50,850.00—that is, 113.00 hours of work at an hourly rate of $450 for Attorney James Sabatini's work on this case. Columbia Dental opposes this motion. For the following reasons, the Court GRANTS Ms. Champagne's motion.

I.   BACKGROUND

On August 15, 2018, Ms. Jennifer Champagne filed this Title VII action alleging her former employer, Columbia Dental, sexually harassed her, discriminated against her, and retaliated against her when she complained about the sexual harassment, all because of her sex. (*See* Dkt. 1 (Compl.).) Ms. Champagne sought compensatory damages, back pay, front pay, bonuses, personal days, lost pension/retirement benefits, emotional distress damages,

punitive damages, reasonable attorneys' fees and costs, interest, job reinstatement, an injunction to remove adverse information from the personnel file, and other just relief.  (*See id.* at Prayer for Relief.)

Columbia Dental moved to dismiss the case in its entirety on September 26, 2018.  (*See* Dkt. 10 (Mot. Dismiss).)  Ms. Champagne amended her complaint, eliminating her claims for gender discrimination and retaliation.  (*See* Dkt. 15 (Am. Compl.).)  Columbia Dental again moved to dismiss on November 21, 2018, (*see* Dkt. 16 (Mot. Dismiss Am. Compl.)), which the parties finished briefing by mid-January 2019, (*see* Dkts. 20 (Opp'n) & 23 (Supp Opp'n)).  The Court denied the Motion to Dismiss on May 9, 2019.  (*See* Dkt. 28 (Decision).)

The parties did not raise any discovery issues with the Court.  Behind the scenes, the parties engaged in written discovery and completed four depositions. (*See* Dkt. 122 (Mot. Attorney Fees) at Ex. 2 (Fee Ledger).)

Once discovery closed, Columbia Dental moved for summary judgment on August 9, 2019.  (*See* Dkt. 33 (Mot. Summ. J.).)  Ms. Champagne opposed the motion, (*see* Dkt. 36 (Opp'n)), and the Court denied summary judgment on November 5, 2019, (*see* Dkt. 37 (Decision)).  As dictated by the operative Scheduling Order, jury selection was set for April 21, 2020.  (Dkt. 24 (Scheduling Order).)

On March 16, 2020, the parties submitted the Joint Trial Memorandum, including Ms. Champagne's objections to Columbia Dental's proposed exhibit list. (*See* Dkts. 40-48 (JTM, Jury Instr., Verdict Form, Voir Dire, Proposed Orders, Obj'n).)  Unfortunately, less than two weeks later the District of Connecticut

postponed all trials due to the COVID-19 pandemic and reset jury selection for June 16, 2020.  (*See* Dkts. 49 (Order) & 50 (Am. Scheduling Order).)  Jury selection was rescheduled an additional four times.  (*See* Dkts. 57, 60, 61, 71 (Am. Scheduling Orders).)  Due to the postponements, the Court twice permitted the parties to submit a revised Joint Trial Memorandum, which they did on May 8, 2020, (*see* Dkt. 50, 51-54 (JTM, Jury Instr., Verdict Form)), and—for the final time—on March 25, 2021, (*see* Dkts. 72-75 (Obj'n, JTM & Amendments)).   The parties also briefed an additional Motion *in limine* by Columbia Dental (*see* Dkts. 88 (Mot. *in limine*) & 93 (Response).)

Jury selection and the trial took place over eight days between November 5 and December 2, 2021.   On November 30, 2021—after both parties completed their cases-in-chief—Columbia Dental orally moved for judgment as a matter of law pursuant to Federal Civil Procedure Rule 50(a).  The Court denied the motion from the bench.  (*See* Dkt. 121 (Decision on Mot. JMOL) at 5.)  On December 2, 2021, the jury concluded Columbia Dental violated Title VII when it sexually harassed Ms. Champagne and constructively discharged her, awarding her $10,000 in emotional distress damages and $100,000 in punitive damages.  (Dkt. 111 (Verdict).)

On December 20, 2021, Columbia Dental filed a motion for judgment as a matter of law under Federal Civil Procedure Rule 50(b).  (*See* Dkt. 119 (Mot. JMOL).) Ms. Champagne timely opposed this motion, (*see* Dkt. 120 (Obj'n)), and the Court ruled in her favor on January 19, 2022 (*see* Dkt. 121 (Order)).  The Court directed Ms. Champagne to file a Motion for Attorneys' Fees, if so desired.  (*Id.*)  This Motion for Attorneys' Fees is now the issue before the Court.

## II. DISCUSSION

Section 2000e—5(k) of Title 42 of the United States Code permits the prevailing party of a Title VII action to recover "reasonable attorney's fees (including expert fees)." 42 U.S.C. § 2000e—5(k). While the concept of a "reasonable attorney fee" might seem fairly straightforward, the history of attorneys' fees jurisprudence is surprisingly convoluted.

The jurisprudence begins with two Circuit Court cases. In 1973, the Third Circuit developed what is commonly known as the two-step "lodestar method": first, multiply the attorney's usual hourly rate by the number of hours billed and, second, offset the final amount to make sure the fee is reasonable. *See Lindy Bros. Builders, Inc. of Philadelphia v. Am. Radiator & Standard Sanitary Corp.*, 487 F.2d 161 (3d Cir. 1973). The following year, the Fifth Circuit developed a 12-factor test to determine a reasonable fee in one step. *See Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714 (5th Cir. 1974). These factors, commonly known as *Johnson* factors, are: (1) "time and labor required;" (2) "novelty and difficulty of the questions;" (3) "skill requisite to perform the legal service properly;" (4) "preclusion of other employment by the attorney due to acceptance of the case;" (5) "customary fee;" (6) "[w]hether the fee is fixed or contingent;" (7) "[t]ime limitations imposed by the client or the circumstances;" (8) "amount involved and the results obtained;" (9) "experience, reputation, and ability of the attorneys;" (10) "'undesirability' of the case;" (11) "nature and length of the professional relationship with the client;" and (12) "[a]wards in similar cases." *Id.* at 717-19.

**Since then, the U.S. Supreme Court has adopted a hybrid between the Third Circuit's "lodestar method" and the Fifth Circuit's 12-factor test, addressing and re-explaining its precedent numerous times. The Supreme Court first established this hybrid approach with *Hensley v. Eckerhart*, 461 U.S. 424 (1983). The first step in the hybrid approach requires the court to determine "a reasonable hourly rate" and then multiply it "by the reasonable hours billed," i.e. the lodestar. *See id.* at 433. At the second step, the court may offset the final fee under exceptional circumstances or when the prevailing party enjoys only partial success. *See id.* at 435-37. In cases following *Hensley*, the Supreme Court explained that the *Johnson* factors can be used at the first stage to calculate the lodestar, but they cannot be double-counted at the offset stage. *See Blum v. Stenson*, 465 U.S. 886, 898 (1984); *Pennsylvania v. Delaware Valley Citizen's Council for Clean Air*, 478 U.S. 546, 564-67 (1986).**

**Lower courts proceeded to misinterpret the Supreme Court's hybrid approach for years to come. Thankfully, the Second Circuit has provided us with two cases—*Arbor Hill Concerned Citizens Neighborhood Association v. County of Albany & Albany County Board of Elections*, 522 F.3d 182 (2d Cir. 2008) and *Lilly v. City of New York*, 934 F.3d 222 (2d Cir. 2019)—that clearly and effectively set forth the "reasonable attorneys' fees" analysis.**

**In 2008, the Second Circuit tackled the first step of the hybrid approach in *Arbor Hill* by clarifying the confusion around how to calculate the "reasonable hourly rate." The Second Circuit stated that a "reasonable hourly rate is the rate a paying client would be willing to pay." *Arbor Hill*, 522 F.3d at 190. To determine**

5

the "reasonable hourly rate," a lower court should consider all case-specific variables—including the *Johnson* factors—"bear[ing] in mind that a reasonable, paying client wishes to spend the minimum necessary to litigate the case effectively" and might negotiate with counsel. *Id.* at 189-90.  The Second Circuit listed the following non-exhaustive factors:

> [1] the complexity and difficulty of the case, [2] the available expertise and capacity of the client's other counsel (if any), [3] the resources required to prosecute the case effectively (taking account of the resources being marshaled on the other side but not endorsing scorched earth tactics), [4] the timing demands of the case, [5] whether an attorney might have an interest (independent of that of his client) in achieving the ends of the litigation or might initiate the representation himself, [6] whether an attorney might have initially acted pro bono (such that a client might be aware that the attorney expected low or non-existent remuneration), and [7] other returns (such as reputation, etc.) that an attorney might expect from the representation.

*Id.* at 184 (numbers inserted).  After determining the "reasonable hourly rate," the lower court should use it to calculate the "presumptively reasonable fee."[1]

In 2019, the Second Circuit took *Arbor Hill* further in *Lilly* and clarified the Supreme Court's hybrid approach at both steps.  <u>First</u>, a district court must calculate the "presumptively reasonable fee" (i.e., the *Hensley* Supreme Court's definition of "lodestar"). *Id.* at 230.  The district court must determine a "reasonable hourly rate by considering all pertinent factors, including the *Johnson* factors," as fully fleshed out in *Arbor Hill*. *Id.* at 230.  From there, it must multiply that

---

[1] The *Arbor Hill* panel suggested using the term "presumptively reasonable fee" instead of "lodestar," as the latter definition has shifted overtime and continues to be a source of confusion.  The Second Circuit did recognize, however, that the term "lodestar" is too entrenched in this doctrine to ever be completely abandoned. *See id.* at 190 n.4.

6

"reasonable hourly rate" by "the number of hours reasonably expended" to arrive at the "presumptively reasonable fee." *Id.* Second, the court "may, in extraordinary circumstances, adjust the presumptively reasonable fee" if there is a factor that should, but has not yet been, considered in determining the reasonable fee. *Id.* The *Lilly* Court approved of the lower court's fee reduction at the second step to account for clerical tasks performed by the attorney. *See id.* at 225.

With this hybrid approach clarified, the Court now addresses Attorney Sabatini's application for reasonable attorneys' fees.

### A. Presumptively Reasonable Fee

As an initial matter, a court may only award attorneys' fees to the "prevailing party." 42 U.S.C. § 2000e—5(k). A "prevailing party" is one who "succeed[s] on any significant issue in litigation which achieves some of the benefit the parties sought in bringing the suit." *Hensley v. Eckerhart*, 461 U.S. at 433 (internal quotation marks omitted). Because the jury ruled in Ms. Champagne's favor on liability and awarded her emotional distress and punitive damages, the Court finds that Ms. Champagne is the "prevailing party."

#### 1. Reasonable Hourly Rate

Plaintiff requests that the Court apply an hourly rate of $450 to compensate her counsel, Attorney Sabatini, who is a managing partner at his employment and personal injury firm. To support her position, she cites a 14-year old District of Connecticut Title VII case awarding a partner a $400 hourly rate and New York district court civil rights cases within the last five years awarding a partner a $450 hourly rate. (*See* Dkt. 122 (Mot. Atty Fees) at 7.) Plaintiff reasons that a $400 hourly

7

rate from 2008 supports a $450 hourly rate in 2022. According to Plaintiff, the reasons for warranting a $450 hourly rate are a) the fee agreement's hourly rate of $450, b) a successful jury trial, and c) the high level of skill required to see a case through trial.

Defendant disputes Plaintiff's arguments and states that all twelve *Johnson* factors weigh against awarding a $450 hourly rate. Defendant contends that Plaintiff's hourly rate should be a maximum of $200.

The Court will now assess all *Johnson* factors and any other additional factors that are relevant to this case.

**Time and labor required**. Attorney Sabatini represented Plaintiff from her initial administrative filing in January 2018, through an eight-day trial that concluded in her favor nearly four years later on December 2, 2021, through post-verdict briefing, and to the present over the attorneys' fees issue. (*See* Dkt. 122 at 3.) Less than 1% of federal lawsuits are decided by a jury.[2] Therefore, Attorney Sabatini's work on this case from the earliest to latest stage of a case warrants a fee at the high range of the prevailing rate.

**Novelty and difficulty of the questions**. Plaintiff alleged Columbia Dental subjected her to sexual harassment and that the resulting hostile work environment left her with no choice but to quit, a legal term known as constructive discharge. Constructive discharge cases are notoriously difficult to prove, because they require a plaintiff to prove the employer "intentionally creates a work

---

[2]    https://www.americanbar.org/news/abanews/aba-news-archives/2020/12/new-aba-study-explains-why-civil-and-criminal-jury-trials-are-di/

atmosphere <u>so intolerable</u> that [s]he is forced to quit involuntarily." *Petrosino v. Bell Atl.*, 385 F.3d 210 (2d Cir. 2004). This elevated intent standard makes constructive discharge claims more difficult to win at trial than the "lesser included" hostile work environment claim or other employment causes of action. *See generally Green v. Brennan*, 578 U.S. 547, 559 (2016) (citing with approval *Pennsylvania State Police v. Suders*, 542 U.S. 129, 149 (2004), which described a hostile-environment constructive discharge as "graver" than its "lesser included component," the hostile work environment). Attorney Sabatini's ability to prove to a jury that Columbia Dental deliberately created an intolerable environment and that Plaintiff was left with no choice but to quit is no small feat and warrants a higher pay rate.

<u>Skill requisite to perform the legal service properly</u>. This factor warrants pay at a higher hourly rate for the same reasons as the previous factor. In addition, trial necessitates the use of skills that need not be performed at other stages of litigation. This includes raising and responding to objections and presenting a compelling narrative to a jury.

<u>Preclusion of other employment by the attorney due to acceptance of the case</u>. The Court has assessed Attorney Sabatini's fee ledger, (*see* Dkt. 122, Ex. 2 (Ledger)), and finds that this case did not preclude Attorney Sabatini from working on other matters for the majority of this litigation. That being said, Attorney Sabatini undoubtedly focused most or all of his attention on this matter as the case ramped up for trial and during the trial. Because of the relatively few cases that

are brought to jury verdict and the extent to which trials require a high level of focus, this factor weighs in favor of a higher rate.

**Customary fee**.  A reasonable hourly rate typically falls within the hourly fee range for lawyers with **comparable experience** in **comparable cases** that are **in the district** where the case is litigated. *See Blum v. Stenson*, 465 U.S. 886, 895 n.11 (1984) (explaining the "prevailing market rate" is what "prevail[s] in the community for similar services by lawyers of reasonably comparable skill, experience and reputation"); *Benjamin v. Oxford Health Ins., Inc.*, 355 F. Supp. 3d 131, 142 (D. Conn. 2019) (same).   In the District of Connecticut, the customary fee for civil rights litigators, including partners, with extensive experience is $350 to $450 per hour.[3] *See e.g., Black v. New England Computer Servs., Inc.*, No. 3:18-cv-2101 (JAM), 2022 WL 702504, at *7 (D. Conn. Mar. 9, 2022) (finding a named partner with 25 years of employment experience is entitled to a reasonable hourly rate of $400 to $450); *Doe v. Univ. of Connecticut*, 3:20cv92 (MPS), 2021 WL 395817, at *10-11 (D. Conn. Feb. 4, 2021) (finding the reasonable hourly rate for a civil rights attorney with 10 years of experience is $400); *Doe v. East Lyme Bd. of Educ.*, No. 3:11cv291 (JBA), 2020 WL 1274774, at *2 n.1 (D. Conn. Mar. 17, 2020) (using hourly rate of $350 for partner litigating student disability case); *c.f. S.B. v. Oxford Health Ins., Inc*., No. 3:17-cv-1485 (MPS), 2020 WL 1702223, at *2 (D. Conn. Apr. 8, 2020) (granting a range of $400 to $450 for experienced ERISA attorneys).

---

[3] The parties cited cases from other districts, but the Court finds these are not particularly helpful given the community-based standard set by the Supreme Court and the Second Circuit means that the District of Connecticut is its own, unique market.

As Plaintiff pointed out, back in 2008, the District of Connecticut applied an hourly rate of $400 to a civil rights litigator who secured a favorable jury verdict in a Title VII case, *Pappas v. Watson Wyatt & Company*, 3:04CV304 (EBB), 2008 WL 45385 (D. Conn. Jan. 2, 2008).  The affidavits from Attorneys Gary Phelan and now-Magistrate Judge Robert A. Richardson, which were submitted in support of the partner's $450 hourly rate fee application, suggest that a partner specializing in employment law would bill somewhere between $325 and $450 in 2008.  *See id.* at *3.  It has been more than a decade since these hourly rates were submitted, and it would be reasonable to infer that hourly rates have increased over time.  Legal fees do not just cover the lawyer's salary—they cover staff salaries, employment benefits, membership and court fees, and myriad overhead expenses to keep a firm afloat.  Based on the U.S. Bureau of Labor Statistics' Consumer Price Index Inflation Calculator, an hourly rate of $450 in 2008 is the equivalent buying power to $604.85 in February 2022 (the latest month with available data).[4]  The hourly rate range should therefore increase, because that is what the market requires.  Put another way, this profession must be able to sustain itself.  Accordingly, civil litigators should not be limited to hourly rates that have not adapted to the changing times.

Attorney Sabatini is a managing partner who has practiced employment law since 2004, approximately 18 years.  Seventy percent of his caseload is devoted to employment law.  He has tried at least twenty cases before a jury as well as bench

---

[4] The CPI Inflation Calculator is available at https://www.bls.gov/data/inflation_calculator.htm/.

trials and arbitrations. (*See* Dkt. 122, Sabatini Aff. ¶¶ 5-14.)  The Court notes that Attorney Sabatini is associated with several dozen active cases in the District of Connecticut.  Defense counsel states that Attorney Sabatini should only be awarded a $200 hourly rate, but counsel provides no evidence (for example, disclosure of his own billing rate) that such a low hourly rate is customary for counsel comparable to Attorney Sabatini.  Accordingly, given Attorney Sabatini's credentials, the lapse of time since the *Pappas* court awarded a $400 hourly rate, and the cumulative increase in cost of living, the proposed hourly rate of $450 is an unassailable fee.

**Whether the fee is fixed or contingent**. The relevant fee agreement contemplates the greater of the two payment methods: either 1/3 of the total value recovered <u>or</u> the fees billed at the attorney's hourly rate in the event attorneys' fees may be awarded by statute.  (*See* Dkt. 122, Ex. 1) at 14 of PDF.)  The latter is the greater fee here.  Ms. Champagne's fee agreement lists Attorney Sabatini's hourly rate as $450.  Therefore, Attorney Sabatini is requesting a fee that complies with the agreement.  *See Johnson*, 488 F.2d at 718 ("In no event, however, should the litigant be awarded a fee greater than he is contractually bound to pay, if indeed the attorneys have contracted as to amount.").

**Time limitations imposed by the client or the circumstances**.  Attorney Sabatini has not informed the Court that this case required "priority work" from the law firm.  Certainly the two-plus weeks of trial work (both pre- and post-trial efforts) took priority over other actions.  But this factor is otherwise neutral.

**Amount involved and the results obtained**.  At some point in the litigation, Plaintiff decided to <u>only</u> seek emotional distress and punitive damages.  The jury awarded Plaintiff $10,000 in emotional distress and $100,000 in punitive damages.  This is not a case involving injunctive relief nor is it a class action lawsuit, which are measurements for awarding a higher hourly rate.  *See id.* at 718 ("If the decision corrects across-the-board discrimination affecting a large class of an employer's employees, the attorney's fee award should reflect the relief granted.").  However, Columbia Dental is a multi-office chain with 12 locations across Connecticut.  Not only does Columbia Dental employ a lot of people, but also evidence at trial showed that Ms. Champagne was not the only person who complained about inappropriate treatment at the hands of Dr. Stanko.  While this this case is not a class action lawsuit, the punitive damages has the potential to change workplace culture and improve the work experience for many employees.  Therefore, in many respects, the purpose of awarding a higher hourly rate for combating system-wide discrimination applies here too.

**Experience, reputation, and ability of the attorneys**.  As stated above, Attorney Sabatini is a managing partner who was admitted to the bar in 1998 and has been practicing employment law since 2004.  Attorney Sabatini did not submit affidavits from other counsel concerning his experience, reputation, and ability.  But this is not a requirement.  For the same reasons that Attorney Sabatini's customary fee should be at the high end of the range, his experience, reputation, and ability also warrant a high fee.  Indeed, his success at trial speaks for itself.

**"Undesirability" of the case**.  The Court finds that representing a survivor of sexual harassment is a noteworthy endeavor.  This type of representation would not negatively impact Attorney Sabatini's reputation in the community and therefore does not warrant a higher hourly rate.

**Nature and length of the professional relationship with the client**.  As stated above, Attorney Sabatini represented Plaintiff from administrative proceedings through post-verdict briefing.  Such representation lasted over four years.  This dedication warrants payment at a higher rate.

Lastly, the Court considers factors referenced by the Second Circuit that do not overlap with the *Johnson* factors.  *See Lilly*, 934 F.3d at 184.  The Court finds that Attorney Sabatini will likely enjoy other returns (such as future business) due to his trial successes, suggesting his hourly rate need not be increased for this reason.  It is unlikely that he would have taken the case on *pro bono* and does not appear to have any interest in the litigation other than serving the needs of his client.

After considering all of these above factors, the Court finds that an hourly rate of $450 is reasonable.

### 2.  *Number of Hours Reasonably Expended*

Attorney Sabatini's firm billed 113.0 hours from initial intake through post-trial briefing.  When considering administrative proceedings, initial pleadings, written discovery, depositions, motions-practice, and an eight-day trial, 113.0 hours (of which approximately 26 hours constituted the trial) is highly proficient.  For example, the case team in *Pappas* included four lawyers who respectively

worked 359 hours, 110.5 hours, 203 hours, and 20.25 hours, totaling 692.75 hours from inception to post-trial.  *See Pappas*, 2008 WL 45385, at *1.  The case team also included law clerks and paralegals who worked 41.25 hours and 56.25 hour, respectively.  *See id.*  To the extent that Attorney Sabatini was able to win at trial as the single lawyer on this case, while expending comparatively minimal hours on the case, is well within the bounds of reasonable.  While Defendant posits the number of hours should be reduced by 50%, the Court finds this request is arbitrary and not supported by evidence.

Defendant argues that Attorney Sabatini's hours should be reduced by at least one hour, because he spent one hour drafting an amended complaint.  While the difference between the amended complaint and the initial complaint is merely the deletion of two counts, the Court finds that a prudent attorney would give at least an hour of consideration to conduct research, evaluate the strength of each count, and determine whether it is a strategically sound decision to relinquish two out of three counts.  Accordingly, this one hour does not warrant a reduction.

For these reasons, the Court finds that Attorney Sabatini reasonably expended 113.0 hours.

### B.    Extraordinary Circumstance Adjustment

Neither party contends that extraordinary circumstances existed to warrant an increase or reduction in fees.  The Court does not identify any either.

### III. CONCLUSION

For the above reasons, the Court GRANTS Plaintiff's Motion for Attorneys' Fees and finds that a fee of $50,850.00—113.0 hours at an hourly rate of $450—is reasonable.  The Clerk is directed to close this case.

IT IS SO ORDERED.

						_____
						Hon. Vanessa L. Bryant
						United States District Judge

Dated at Hartford, Connecticut: March 30, 2022.